IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                           OPINION AND ORDER

                Plaintiff,

                             08-cr-69-bbc

        v.

LEE ANTON JACKSON,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      The grand jury has charged defendant Lee Anton Jackson with being a felon in possession of a firearm.  Before the court is defendant's request for a ruling on whether he is entitled to present evidence and a jury instruction at trial on his defense of "innocent" and "justifiable" possession.  Dkt. #46 at 4.  The court's ruling on this motion will determine whether defendant goes to trial or pleads guilty to the charge.  The government opposes defendant's motion, deeming it little more than a request for permission to seek jury nullification. Dkt. #50.  For the reasons stated below, I am denying defendant's motion because the court of appeals does not recognize an innocent possession defense to a § 922(g) charge; even if it did, defendant's proffered facts do not fit within the court of appeals' dicta on the limits of such a defense.

      The September 3, 2008 report and recommendation sets forth this court's findings

1

of fact that led to the charge against defendant.  Dkt. #40 at 1-4.  In brief, on the evening of March 9, 2008, Madison police officers were conducting surveillance of a strip mall in Madison, looking for evidence that defendant was fencing stolen goods.  The police saw defendant meet with his mother, DaFondeau Eaton, and hand her a computer bag.  Although police did not know it at the time, defendant was lending his computer to his mother so that she could download and view pictures of her granddaughter, Jackson's niece.  After Eaton drove away, police stopped her car, obtained her consent to search the bag that her son had given her and found a handgun in a side pocket.  Eaton was genuinely shocked; she had no idea that the gun was in the bag.

In support of his current motion, defendant has proffered additional facts. He was planning to move to Atlanta, Georgia on March 10, 2008. On March 9, 2008, defendant met with his friend "Charles."  Charles insisted on giving defendant a .357 Magnum handgun, reasoning that Atlanta had a high crime rate and defendant had no friends or family there to look out for him.  Defendant refused to accept the gun, but Charles left it on the seat of Jackson's car.  Upon realizing that Charles had left the gun behind, defendant placed it in his computer bag and called his mother in order to get rid of the gun.

Defendant now claims that he told his mother that there was a gun in the computer bag. Dkt. #46 at 3-4.  This claim contradicts the facts found in the report and recommendation.  Eaton's sworn testimony at the June 18, 2008 suppression hearing was that she had arranged to pick up her son's computer in order to look at pictures of her

2

granddaughter, Hrg. Trans., dkt. #20, at 79, and the police reported that she seemed shocked to learn that there was a handgun in the computer bag.  Id. at 65.  Additionally, because Eaton has prior felony convictions, her knowing possession of the handgun would violate the same statute with which her son has been charged.

Defendant asserts that the long-standing antagonistic relationship between his family and the Madison Police Department made him fearful that the police would not treat him fairly if he alerted them to the gun that Charles had left with him.  His plan was for his mother "to de-possess the gun as quickly as possible" by finding someone who was not a felon who could turn the gun over to the police.  Dkt. #46 at 4.  This plan failed because, as luck would have it, the police were watching defendant that night and thought he was passing stolen goods to his mother.

Defendant wishes to introduce these facts in order to persuade the jury that his transitory handling of the handgun should be deemed innocent and justifiable and therefore not a violation of §922(g)(1).  Jackson concedes that circuit law does not support his position.  E.g., United States v. Matthews, 520 F.3d 806 (7th Cir. 2008); United States v. Stevens, 453 F.3d 963 (7th Cir. 2008); United States v. Hendricks, 319 F.3d 993 (7th Cir. 2003); United States v. Conley, 291 F.3d 464 7th Cir. 2002); United States v. Lane, 267 F.3d 715 (7th Cir. 2001).  Jackson claims, however, that in Hendricks, the court seemed to suggest that a defendant would be entitled to a jury instruction on innocent possession if he met certain conditions.  First, the defendant must have obtained the firearm innocently and

3

held it with no illicit purpose.  Second, the defendant took adequate measures in light of the circumstances to rid himself of the firearm as promptly and as reasonably as possible.  In particular, the defendant's actions must demonstrate both that he had the intent to turn the weapon over to the police and that he was pursuing such an intent with immediacy and through a reasonable course of conduct.  Hendricks, 319 F.3d at 1007.

What the court actually held in Hendricks was that in this circuit, an innocent possession defense is limited to situations in which the elements of a justification defense, that is, necessity, duress or self-defense, are present.  The court then stated in dicta that even if it were to adopt an innocent possession defense apart from justification, Hendricks would not be entitled to it because the facts did not support such a defense.  Id.  Contrary to defendant's contention, the court did *not* hold that a defendant would be able to argue this theory to the jury; the court's observation on this point was directed to defendant's other theory of defense, namely that his possession of the firearm was so fleeting that it did not constitute *knowing* possession.  Id. at 1005-06.

As the government notes, most courts that have considered this question have concluded that unless a defendant's intent is part of a legally recognized justification defense, it is not relevant to culpability under § 922(g)(1).  An inquiry into intent would undermine the statutory scheme governing felon-in-possession offenses, which expressly avoids the need to delve  into the motive of a felon caught possessing a firearm.  United States v. Gilbert, 430 F.3d 215, 218-19 (4th Cir. 2005).  See also United States v. Adkins, 196 F.3d 1112,

4

1115 (10th  Cir. 1999) (unless felon truly did not know that what he possessed was a firearm or there was some recognized legal justification for him hold it, even fleeting possession is enough to support a conviction under § 922(g)(1)); but see United States v. Mason, 233 F.3d 619,  (D.C. Cir. 2000) (innocent possession can be a defense to a § 922(g)(1) charge if factual prerequisites are established).  In United States v. Lane, 267 F.3d 715, decided after Mason, the Seventh Circuit rejected the approach adopted in that case, holding that to prove possession of a firearm, the government need only establish that the defendant knowingly held the gun; because evidence of the defendant's motive was not relevant to the question of whether he held the gun, it was not admissible. Id. at 720. Therefore, defendant is not entitled to present an innocent possession defense to the jury in this circuit.

Even if this court were to engage in the hypothetical exercise undertaken by the court in Hendricks, defendant still would not be entitled to present his defense to the jury because he cannot establish that he took adequate measures to rid himself of the firearm as promptly and as reasonably as possible.  Defendant asserts that because he feared the police would not believe him if he attempted to surrender Charles's .357 Magnum personally, he passed it to his mother, another convicted felon with her own credibility problems with the police, who was supposed to find some inoffensive non-felon willing to surrender the handgun to the police.  This purported plan was circuitous and irrational; it compounded the crime by passing the handgun from one convicted felon to another; and it contradicts the version of events endorsed by defendant and his mother in their pretrial attempts to suppress the

5

handgun.  In sum, there is no legal or factual support for defendant's innocent possession defense.

## ORDER

It is ORDERED that defendant Lee Anton Jackson's request to present an innocent possession theory of defense at trial is DENIED.

Entered this 12th day of November, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge